IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

Jeremy M. Blank,

    Plaintiff,

v.    Case No. 20-cv-732-wmc

Joel Lindow, et al.,

    Defendants.

## AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS

Plaintiff Jeremy M. Blank, proceeding pro se, complains against the Defendants Joel Lindow, "John" Gebhart, Darren Hutchenreuter, Monique Steiner, Carol Isbell, and Mitchell Kunhart as follows:

### Nature of the Case

1.   This case is an action for declaratory, compensatory and punitive damages with a demand for a jury trial on the allegations that the Defendant's violated Plaintiff's rights under the 8th Amendment of the United States Constitution.

### Jurisdiction and Venue

2.   Jurisdiction is proper in federal court pursuant to 28 U.S.C. §1331 because this action arises under 42 U.S.C. §1983 and the United States Constitution.

3.   Venue is proper in this District pursuant to 28 U.S.C. §1391 because the events alleged below occurred in the Western District of Wisconsin.

4.   Declaratory relief is authorized under 28 U.S.C. §2201.

1

### The Plaintiff

5. The Plaintiff Jeremy M. Blank is a 38 year old inmate in the care, custody, and control of the Wisconsin Department of Corrections. During all times relevant to this suit, Plaintiff was incarcerated at the Jackson Correctional Institution ("JCI"), which is located at N6500 Haipek Road, Black River Falls, located in Jackson County, Wisconsin.

### The Defendants

6. The Defendant Joel Lindow was a sergeant working for the Wisconsin Department of Corrections ("WI DOC") at the JCI at all times relevant to this suit.

7. The Defendant "John" Gebhart was a Correctional Officer ("CO") working for the WI DOC at the JCI at all times relevant to this suit.

8. The Defendant Darren Hutchenreuter was a CO working at the JCI at all times relevant to this suit.

9. Defendant Monique Steiner was a social worker working for the WI DOC at the JCI at all times relevant to this suit.

10. The Defendant Carol Isbell was a CO working for the WI DOC at the JCI at all times relevant to this suit.

11. The Defendant Mitchell Kunhart was a sergeant working for the WI DOC at the JCI at all times relevant to this suit.

### The Relevant Law

12. The Eighth Amendment, which prohibits "punishment" that is "cruel and unusual," imposes a duty upon prison officials to provide "humane conditions of confinement" by ensuring that inmates receive adequate food, clothing, shelter, and medical care. **Farmer v. Brennan,** 511 U.S. 825, 832 (1994). Prison officials also must ensure that "reasonable measures" are taken to guarantee inmate safety and prevent harm. **Id.**

13. To prevail under the Eighth Amendment based on a failure to prevent harm, an inmate must demonstrate that (1) the harm that befell the prisoner was objectively, sufficiently serious and a substantial risk to his health or safety; and (2) the individual defendants were deliberately indifferent to that risk. Id.

14. Suicide, attempted suicide and other acts of self-harm clearly pose a "serious" risk to an inmate's health and safety. See Collins v. Seemen, 462 F.3d 757, 760 (7th Cir. 2006)(quoting Sanville v. McCaughtry, 266 F.3d 724, 733 (7th Cir. 2001)); see also Rice ex rel. Rice v. Correctional Medical Servs., 675 F.3d 650, 665 (7th Cir. 2012)("[P]rison officials have an obligation to intervene when they know a prisoner suffers from self-destructive tendencies.").

15. When the harm at issue is a suicide or attempted suicide, deliberate indifference requires "a dual showing that the defendant: (1) subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarded that risk." Collins, 462 F.3d at 761 (citing Matos ex rel. Matos v. O'Sullivan, 335 F.3d 553, 557 (7th Cir. 2003)).

### Statment of Facts

16. On July 8, 2020, Plaintiff was woken up by Defendant Lindow at approximately 8:30 am for having his cell window covered with a blanket.

17. Following a brief discussion, Defendant Lindow instructed the Plaintiff to "remove the blanket" or risk getting a "conduct report" – a disciplinary infraction report that generally results in a loss of privelages. Plaintiff complied with the instruction, and removed the blanket from the window.

18. Shortly thereafter, Defendant Lindow returned to Plaintiff's

3

cell and instructed him to accompany him to the staff "desk" – an area where the security staff congregate – so he can "serve" him a "conduct report" for having his window convered.

19. At this point, Plaintiff's behavior was – and continued to be for the rest of the day – aggressive, confrontational, and self-destructive. Plaintiff continuously remarked, "I don't give a shit about nothin'" in his numerous interactions with Defendant Lindow.

20. As punishment for covering his window, Plaintiff received seven (7) days loss of cell. "Loss of cell" means that an inmate is not permitted to be in his cell between the hours of count clearing (approx. 7:50 am) until 9:00 pm.

21. During this time, JCI mandated that all inmates were required to wear a face mask when outside of their cell and inside buildings, and while outside when not able to maintain at least six (6) feet apart from another person.

22. Plaintiff suffers from asthma and relies on a rescue inhaler prescribed for usage of "two puffs" up to "four times a day as needed."

23. Being forced to constantly wear a cloth mask over his mouth and nose caused Plaintiff to use his rescue inhaler approximately eight (8) puffs prior to 11:00 am, resulting in him asking Defendant Isbell to phone JCI Health Services Unit ("HSU") with a request to be seen immediately.

24. Shortly after said request, Defendant Lindow responded and stated, "HSU wasn't concerned" and that Plaintiff "should just keep using the tools at [his] disposal; i.e., [his] inhaler."

25. Plaintiff became very distraught upon hearing this information and slammed his inhaler on the staff desk and declared, "If HSU isn't concerned, neither am I. I don't want the inhaler." While this entire interaction was taking place (Defendant Lindow relaying HSU's response)

4

all of the Defendant's except Kunhart were at the staff desk and listening intently to the "back-and-forth" transpiring between Defendant Lindow and the Plaintiff.

26. After a brief exchange about not being allowed to leave the inhaler on the staff desk by Defendant's Lindow and Gebhart, Plaintiff took it back stating, "I'll just turn it in to HSU when I go up and refuse my meds at 5:30 tonight."

27. Defendant Lindow replied that he "didn't care" what Plaintiff did with his inhaler.

28. The Plaintiff then responded, stating "I don't give a shit about nothin. I'll just kill myself, I don't give a shit." Defendant Lindow then replied, "Will you go ahead and sign a 'DNR' so I don't have to bring your ass back?"

29. During this interaction, and after the DNR comment by Defendant Lindow, none of the other Defendant's intervened in any shape, fashion, or form, though they were all clearly listening to every word said. Plaintiff responded to Defendant Lindow's DNR comment by saying something to the effect of "I love life too much to want to die" in a very sarcastic tone of voice.

30. Defendant Gebhart chimed in next, stating that "I have a DNR on file." Plaintiff interpreted this to be an attempt to persuade him to sign on per Lindow's request.

31. Plaintiff responded to Defendant Gebhart's comment, stating "Aren't you a fucking tough guy." At this point, Plaintiff left the staff desk.

32. Shortly after 12:10 pm count was cleared over the all-call Plaintiff asked Defendant Isbell to phone JCI Psychological Services Unit ("PSU") staff, saying "Call PSU NOW!!" This direct request is consistent

5

with JCI policy to report a mental health crisis to the nearest staff.

33.  Defendant Isbell informed Plaintiff that PSU said Unit Staff should "monitor" him, and that if "he needed anything further to submit a slip."

34.  On July 9, 2020 at approximately 1:50 am, Plaintiff attempted suicide by using a razor blade (from a disposable razor for shaving) taped to a pen to cut the inside of his elbow approximately 5-7 slices until he sliced what he believed to be his vein, and blood started to gush out.

35.  Upon seeing the copious amounts of blood, Plaintiff decided that he didn't want to die alone in a prison bathroom and made his suicide attempt known to staff by exiting the bathroom and announcing his actions and need for medical attention.

36.  JCI staff on-duty took life-saving actions by squeezing Plaintiff's left arm/bicep while awaiting the arrival of the ambulance.

37.  Plaintiff was transported to Black River Falls Memorial Hospital where he received five (5) stitches to close his wound.

### Count I

38.  Plaintiff re-alleges and reincorporates, as though fully set forth herein, each and every allegation above.

39.  Defendant Lindow acted with deliberate indifference on July 8, 2020, in failing to take reasonable measures to prevent the Plaintiff from engaging in a suicide attempt following his threat to commit suicide and requesting that he (Plaintiff) "sign a 'DNR' so [he] wouldn't have to bring [his] ass back," and not notifying PSU of the suicide threat.

### Count II

40.  Plaintiff re-alleges and reincorporates, as though fully set forth herein, each and every allegation above.

41.   Defendant's Gebhart, Hutchenreuter, Steiner and Isbell acted with deliberate indifference on July 8, 2020, in failing to take reasonable measures to prevent the Plaintiff from engaging in a suicide attempt having heard his threat to commit suicide and not notifying PSU of the suicide threat.

### Statement of Facts (cont.)

42.   During second shift (2:30 pm - 10:30 pm) CO Walker observed that Plaintiff was acting out of sorts (speaking "more slowly than usual," had a "serious like demeanor that was unlike his normal lively sarcastic self."). CO Walker was so concerned about Plaintiff and his uncharacteristic behavior and comments (sick of being "bullied" and refusing PSU slips because "that doesn't work and it's too late.") that she informed Defendant Kunhart of the events and recommended Plaintiff be placed on clinical observation.

43.   Defendant Kunhart responded, stating that Plaintiff was merely seeking attention and that, at any rate, "it was his Friday and is not going to deal with it."

### Count III

44.   Plaintiff re-alleges and reincorporates, as though fully set forth herein, each and every allegation above.

45.   Defendant Kunhart acted with deliberate indifference on July 8, 2020, in failing to take reasonable measures to prevent the Plaintiff from engaging in a suicide attempt following CO Walker raising her concerns and recommendation that Plaintiff be placed on clinical observation status.

## Prayer for Relief

46. WHEREFORE, Plaintiff prays for relief as follows:

   A. That he receive a jury trial on all issues so triable;

   B. That he receive a declaration that his Eighth Amendment right to be free from cruel and unusual punishment was violated;

   C. That he receive an award of compensatory damages against the defendant's in an amount to be determined according to the proof presented at trial;

   D. That he receive an award of exemplary or punitive damages against the defendant's collectively in the amount of $4,000,000.00 to punish them for their wrongful acts, and to deter others from committing the constitutional violations described herein;

   E. That he be awarded costs and expenses in an amount to be determined; and

   F. That he be awarded such other and further relief as this Honorable Court may deem just and proper.

## CComplaint Certification and Conclusion

47. I, Jeremy M. Blank, re-allege and reincorporates, as though fully set forth herein, each and every allegation above and hereby swear on the penalty of perjury that the facts stated are true and correct, and based upon personal knowledge, in accordance with 28 U.S.C. §1746.

Executed this _19_ day of January, 2021.

*Jeremy M. Blank*
Jeremy M. Blank

#341893
JCI

N6500 Haipek Rd, P.O. Box 233
Black River Falls, WI 54615

Pro se Plaintiff